**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**PHILLIP A. SAMS III,**

     **Plaintiff,**

**vs.**                         **Case No.  1:17cv15-CAS**

**NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,**

     **Defendant.**
_____/

## MEMORANDUM OPINION AND ORDER

This is a Social Security case referred to the undersigned upon
consent of the parties, ECF No. 8, by District Judge Mark E. Walker, ECF
No. 9, and before the Court pursuant to 42 U.S.C. § 405(g) for review of the
final determination of the Acting Commissioner (Commissioner) of the
Social Security Administration (SSA) denying Plaintiff's application for a
period of disability and Disability Income Benefits (DIB) filed pursuant to
Title II of the Act.  For the reasons set forth herein, the decision of the
Commissioner is reversed and remanded.

## I. Procedural History

On August 14, 2013, Plaintiff, Phillip A. Sams III, filed an application
for DIB, alleging disability beginning August 14, 2013, based on a stroke in

2012; depression; hyperthyroid; heart disease; anxiety; migraines and bad headaches; blurred vision; back injury; fainting spells/dizziness; chest pains; and weakness on left side. Tr. 33, 171-72, 186-87, 195.[1]  Plaintiff meets the insured status requirements for DIB through March 31, 2017. Tr. 33, 195.

Plaintiff's application was denied initially on October 15, 2013, and upon reconsideration on January 15, 2014.  Tr. 33, 77-121.  On January 20, 2014, Plaintiff requested a hearing.  Tr. 33, 122-23.  On December 31, 2015, Plaintiff's representative (Andrew S. Youngman, a non-attorney) filed a pre-hearing memorandum.  Tr. 268-76.  On January 7, 2016, Administrative Law Judge (ALJ) Gregory J. Froehlich, presided over a video hearing from Jacksonville, Florida, and Plaintiff appeared in Gainesville, Florida, represented by L. Lynn Lawrence, an attorney, and appointed co-representative from the same firm.  Tr. 33, 49, 51, 113-14, 166-70.  (Mr. Youngman, a non-attorney, also represented Plaintiff on post-hearing matters.  Tr. 27, 33, 113-14, 166-70, 278-86.)  Plaintiff testified during the hearing.  Tr. 52-68.  Donna P. Mancini, an impartial vocational expert, also testified.  Tr. 33, 69-73, 265-67 (Résumé).

---

[1] Citations to the transcript/administrative record, ECF No. 12, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

The ALJ provided the vocational expert with a hypothetical set of facts. Tr. 70. Based on those facts, the vocational expert testified that Plaintiff would not be able to perform his past work, classified in the Dictionary of Occupational Titles (DOT) as automobile mechanic, medium exertion with a SVP rating of 6 (skilled) and performed by Plaintiff at the heavy exertional level. Tr. 69-70; *see infra* at n.2. The vocational expert testified that sedentary work would be available and would include positions such as a document preparer, DOT number 241.587-018, addresser, DOT number 209.587-010, and cutter and paster, DOT number 249.587-014, with each job classified as unskilled with an SVP of 2. Tr. 70-71. Conversely, the vocational expert opined in response to a second hypothetical that Plaintiff would not be able to perform competitive employment if he would be off task 20% during the workday and outside of the normally permitted breaks. Tr. 71. The ALJ asked the vocational expert if there are any conflicts between her testimony and the DOT and she responded:

> A  The only conflict, Your Honor, is, and it's not really a conflict, is that the DOT does not address the sit/stand option and I can testify to that aspect because I've worked in the field, met with employers, discuss with them those issues, and then the testimony is recalled from those conversations.

Tr. 71. Plaintiff's counsel then inquired of the vocational expert:

Q  Okay.  What part of the file did you review to determine the -- his job classifications and -- for this position, for these files?

A  Okay.  I don't have any exhibit number.  Is [sic] is the Disability Report, Adult Form, SSA-2368, and specifically the information that's contained on page 4 of 11.[2]

Q  Okay.  And when you say, for instance, on the document preparer that there is 48,353 jobs, where are you obtaining that number from?

A  Under a program called a Job Browser Pro by SkillTRAN. What SkillTRAN does, it extracts the information from the Department of Labor, Bureau of Labor Statistics in a computer program and identifies DOT numbers with specific numbers of positions in the state and national economy.

Q  And the DOT hasn't been updated since, like, 1992; is that correct?

A  The DOT -- yes, the information in the update is -- is old. That is correct.

ATTY:  Okay.  Your Honor, one, *I'd like to raise the objection that the way that the numbers are being prepared is unclear and can't -- is being related back into old DOT numbers*.[3]

ALJ:  Okay.  That objection's [sic] overruled.  Thank you.

---

[2]  The vocational expert testified that Plaintiff could not perform his past work as an automobile mechanic, Tr. 69, and appears to have referred to the Disability Report – Adult - Form SSA 3368, not SSA 2368, and page 4 of 10 not 11, when determining Plaintiff's prior relevant work.  Tr. 68, 185, 188.  The job title is "mechanic"; type of business, "automotive repair shops"; and worked from 2000 to 2010.  Tr. 188.

[3]  This objection made during the hearing regarding the vocational expert's testimony is discussed in the analysis, issue IV, subsection A, *infra*.

Tr. 72 (emphasis supplied). The vocational expert further testified that the

positions of document preparer, cutter and paster, and addresser that

require fingering, (occasional and/or frequent), would not be available to

such a person, and "with no fingering, those three positions would be

eliminated." Tr. 73. The ALJ left the record open for 15 days to obtain

additional medical records. Tr. 73-74.

On January 26, 2016, Mr. Youngman, representing Plaintiff, filed a

lengthy post-hearing memorandum expanding on the objection to the

vocational expert's testimony and explaining the bases on which Plaintiff

alleged the testimony was unreliable. Tr. 278-332. Mr. Youngman

objected to the vocational expert testimony, arguing that it was based on

outdated information and should have been based on the Department of

Labor's current source for evaluating job requirements found at the United

States Department of Labor (USDOL) "O*NET" website rather than on the

DOT job descriptions and skill level.[4] Tr. 280-81.

On March 7, 2016, the ALJ issued a decision and denied Plaintiff's

application for benefits, concluding that Plaintiff was not disabled from

---

[4] In part, Plaintiff argued that the three jobs referenced by the vocational expert have SVP skill levels "that range from 4.0 to <6.0" (not an SVP of 2) and "would exceed and have no correlation to unskilled the [sic] jobs Ms. Mancini offered." Tr. 281 (citation omitted); *see infra* at 8 ¶4 (ALJ's residual functional capacity assessment). Similar arguments were made in Plaintiff's post-decision memorandum filed on May 12, 2016, as part of Plaintiff's request for review of the ALJ's decision. *See* Tr. 335-36.

August 14, 2013, through the date of the decision.  Tr. 41.  The ALJ did not rule on the post-hearing objections or more specifically explain why the objection raised to the vocational expert's testimony at the hearing was overruled.

On May 2, 2016, Plaintiff's representative, Mr. Youngman, requested review of the ALJ's decision by the Appeals Council and filed a brief dated May 12, 2016, and Medical Source Statement's (MSS) from Innocent Odocha, M.D., and Brent Stuart, M.D., both dated August 19, 2016.  Tr. 2, 5-6, 27-28, 333-38 (Exhibit 22E),[5] 907-09 (Exhibit 31F), 910 (Exhibit 32F). Plaintiff's representative also submitted an MSS from Sarah Bolis, M.D., from UF Health dated November 9, 2016, Tr. 8 (Bolis), 13 (Bolis), 19 (Bolis), and records related to a Workers' Compensation claim dated November 1, 2016, Tr. 10-16.

On December 7, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision making the ALJ's decision the final decision of the Commissioner.  Tr. 1-7; *see* 20 C.F.R. § 404.981.  The Appeals Council noted that it had considered the one-page MSS from Dr. Bolis dated August 19, 2016, and the medical records (10 pages) from UF Health

---

[5]  Plaintiff provided additional objections to the vocational expert's testimony. Tr. 335-36.

dated November 9, 2016, and stated: "The [ALJ] decided your case through March 7, 2016. This new information is about a later time. Therefore, does not affect the decision about whether you were disabled beginning on or before March 7, 2016." Tr. 2; *see* Tr. 5-6.

On November 10, 2016, Plaintiff, represented by different counsel, filed a Complaint in this Court seeking review of the ALJ's decision. ECF No. 1. The parties filed memoranda of law, ECF Nos. 18 and 19, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity since August 14, 2013, the alleged onset date." Tr. 35.

2. "The claimant has the following severe impairments: left shoulder osteoarthritis; degenerative disk disease of the cervical and lumbar spine, status post ACDF; coronary artery disease; RSD in the right upper extremity; bilateral median nerve entrapment; anxiety; and depression." *Id*. The ALJ determined that Plaintiff's history of TIA and thyroid issues are non-severe. *Id.*

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 36. The ALJ also considered the four broad functional areas known as the "paragraph B" criteria and determined that Plaintiff had *moderate* limitations in activities of daily living; *mild* limitation in maintaining social functioning; *moderate* limitations in maintaining concentration, persistence, and/or pace; and *no* episodes of decompensation, of extended duration. *Id.*

4. "[T]he claimant has the residual functional capacity [RFC] to perform less than a full range of sedentary work as defined in 20 CFR 404.1567(a) and needs a 30-minute sit/stand option. The claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. He can occasionally balance but never can kneel, crouch, or crawl. The claimant is precluded from bilateral overhead reaching and cannot handle/finger more than frequently with the right hand. The claimant cannot use his upper extremities for repetitive movements. The claimant cannot work around moving, mechanical parts or at unprotected heights. Additionally, the claimant is limited to performing simple tasks with little variation that take a short period of time to learn (up to and including 30 days). He can tolerate changes in a routine work setting. The claimant is limited to occasional contact with the general public." Tr. 37.

5. "The claimant is unable to perform any past relevant work" as an automobile mechanic, medium exertion, with an SVP rating of 6. Tr. 40.

6. The Plaintiff was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date. *Id.* Plaintiff "has at least a high school education and is able to communicate in English." *Id.*

7. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." Tr. 41. The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as document preparer, addresser, and cutter and paster, each with a sedentary exertion level and an SVP of 2 (unskilled).[6] Tr. 41; *see* Tr. 70-71.

---

[6] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). An SVP of 1 means a "[s]hort demonstration only." Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. An SVP of 2 means "[a]nything beyond short demonstration up to and including 1 month." *Id.* An SVP of 3 means "[o]ver 1 month up to and including 3 months." Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. In part, "[s]edentary work involves lifting no more than 10

The vocational expert also testified these positions would be eliminated if a person was unable to have any fine manipulation skills, including fingering. *See* Tr. 73.

8. "The claimant has not been under a disability, as defined in the Social Security Act, from August 14, 2013, through the date of [the] decision." Tr. 41.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). The Court may not reweigh the evidence or substitute

_____

pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. Moore, 405 F.3d at 1211.[7]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable

---

[7] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[8]

---

[8] The RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining

5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

performance of past relevant work.  Consideration is given to the

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

---

physicians or other persons, and medical records.  *Id.*  The responsibility for
determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social
Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996, rescinded eff.
Mar. 27, 2017) ("The term *"residual functional capacity assessment"* describes an
adjudicator's finding about the ability of an individual to perform work-related activities.
The assessment is based upon consideration of all relevant evidence in the case
record, including medical evidence and relevant nonmedical evidence, such as
observations of lay witnesses of an individual's apparent symptomatology, an
individual's own statement of what he or she is able or unable to do, and many other
factors that could help the adjudicator determine the most reasonable findings in light of
all the evidence.").  The Court will apply the SSR in effect when the ALJ rendered his
decision.  *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS
8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917
(M.D. N.C. Feb. 23, 2017).

experience.  <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237 (11th Cir. 2004);

<u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999); <u>Chester</u>, 792 F.2d at

131; <u>MacGregor v. Bowen</u>, 786 F.2d 1050, 1052 (11th Cir. 1986); 20

C.F.R. § 404.1520(a)(4)(v), (e) & (g).  An ALJ may make this determination

either by applying the grids or by obtaining the testimony of a vocational

expert.  <u>Phillips</u>, 357 F.3d at 1239-40; *see* 20 C.F.R. Part 404, Subpart P,

Appendix 2.  If the Commissioner carries this burden, the claimant must

prove that he or she cannot perform the work suggested by the

Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and

consequently, is responsible for producing evidence in support of his claim.

*See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.

## IV. Analysis

### A.

Plaintiff first argues that the ALJ violated the Hearings, Appeals, and

Litigation Law Manual (HALLEX) § I-2-5-55 when he did not address

Plaintiff's post-hearing written objections regarding the vocational witness

testimony, resulting in reversible error. [9]  ECF 14 at 5-8.  Plaintiff argued in

---

[9] HALLEX I-2-5-55, cited by Plaintiff, was amended after the hearing in this case to change the title and to remove outdated instructions and information that was duplicative of HALLEX I-2-6-74.  *See* Social Security Administration Office of Disability and Adjudication and Review Transmittal No. I-2-174

the post-hearing objections that the information relied on by the vocational expert was outdated and unreliable—essentially the same objection Plaintiff made toward the end of the hearing. *Id.*; *see* Tr. 72. At the hearing, the vocational expert testified that she obtained the number of available jobs for document preparer as 48,353 positions in the United States economy. Tr. 70. When asked the source for that number, the expert testified that she consulted "Job Browser Pro by SkillTRAN," which she said "extracts information from the Department of Labor, Bureau of Statistics in a computer program and "identifies specific DOT numbers with specific numbers of positions in the national economy." *Id.* The expert agreed that that the DOT has not been updated in many years. *Id.* Plaintiff then objected as follows: "Your Honor, one, I'd like to raise the objection that the way that the numbers are being prepared is unclear and can't - - is being related back to the old DOT numbers." Tr. 72.

In his post-hearing memorandum of law and objections to the vocational expert's testimony, Plaintiff contended that the vocational expert lacked expertise to opine as to the number of jobs available in the local or regional economy. Tr. 278. He also contended that the testimony of the vocational expert was unfounded, unsupported and unreliable. *Id.* In his

---

explaining amendments to chapter I-2-5 of the HALLEX. *See* www.ssa.gov/OP_Home/hallex/TS/tsi-2-174.html.

objections, Plaintiff argued that the jobs the vocational expert testified were available for Plaintiff are no longer performed at the unskilled level in the current labor market.  Tr. 280.  He supported this contention with references to the O*NET, which he contends replaced the DOT by the Department of Labor because the DOT was considered obsolete.  *See* Tr. 288 (letter from the Division Chief, Occupational Employment Projections, Department of Labor).  The post-hearing objections and evidence were not addressed by the ALJ in the March 7, 2016, decision.  Tr. 39-42.

In his memorandum in this Court, Plaintiff contends:

> (1) that unambiguous Agency policy requires the ALJ and vocational expert to rely upon "up-to-date and reliable" vocational information, 20 C.F.R. 404.1566(d); SSR 00-4p, (2) the DOT descriptions for the above-named jobs had not been changed in well over 20 years, and (3) the US Department of Labor's (USDOL) *current source* for evaluating the requirements of jobs in the national economy is found at USDOL's "O*NET" website.

ECF No. 14 at 5-6.  In addition to arguing that the vocational expert's testimony that Plaintiff could perform three jobs as described in the DOT, which Plaintiff contends are obsolete and do not exist in significant numbers in the national economy, Plaintiff also contends that the ALJ was required under the HALLEX procedures to address the post-hearing objections.  ECF No. 14 at 5-8.  "The [HALLEX] is a policy manual written by the [SSA] to provide policy and procedural guidelines to ALJs and other

staff members." *See* Howard v. Astrue, 505 F. Supp. 2d 1298, 1300 (S.D. Ala. 2007) (citing Moore v. Apfel, 216 F.3d 864, 868 (9th Cir. 2000)). The Eleventh Circuit Court of Appeals "has not decided whether HALLEX carries the force of law." McCabe v. Comm'r of Soc. Sec., 661 F. App'x 596, 599 (11th Cir. 2016) (citing George v. Astrue, 338 F. App'x 803, 805 (11th Cir. 2009) (calling the assumption that HALLEX carries the force of law "a very big assumption")). "[R]emand is required only if the ALJ (or AC) violates the procedures in the HALLEX and only if the violation prejudices the claimant." Cohan v. Comm'r, Soc. Sec. Admin., No. 6:10-cv-719-Orl-35DAB, 2011 WL 3319608, at *5, (M.D. Fla., July 29, 2011) (citation omitted). *See, e.g.*, Carroll v. Comm'r of Soc. Sec., 453 F. App'x 889, 892-93 (11th Cir. 2011) (unpublished) (finding that agency's violation of its own governing rules must result in prejudice to support remand for agency noncompliance).

Plaintiff's representative attached several exhibits to the post-hearing objections including letters from representatives from the Bureau of Labor Statistics, U.S. Department of Labor, stating in part that the DOT "is no longer in use by the Bureau of Labor Statistics and that it is regarded as obsolete" and that "[t]he DOT has been replaced by the Occupational

Information Network (O*NET), which was developed by the Employment and Training Administration." Tr. 288, 299.

Even though the Department of Labor has essentially replaced the DOT with the O*NET, the Code of Federal Regulations lists the DOT as an acceptable publication. An ALJ may take notice of this information in forming his opinion whether certain jobs exist in the national economy. 20 C.F.R. § 404.1566(d)(1); *see* 20 C.F.R. § 404.1560(b)(2) (use of DOT to determine past relevant work). The O*NET is not listed as an example of an acceptable publication. 20 C.F.R. § 404.1566(d). Several courts in this Circuit have considered whether a court should remand for consideration of the O*NET, *see* Zayas v. Comm'r of Soc. Sec., No. 6:12-cv-1553-Orl-31TB, 2013 U.S. Dist. LEXIS 185833, at *12 (M.D. Fla. Oct. 10, 2013) (cases cited therein), *adopted*, 2014 U.S. Dist. LEXIS 30594 (M.D. Fla. Mar. 10, 2014), and the courts determined that remand was not warranted on this ground. *Id*.

Although the DOT continues to be an approved source and is expressly relied on by the Commissioner in SSR 00-4p for information about the national economy, and although the vocational expert was not required to rely on O*NET, Plaintiff raised his objection at the hearing challenging the reliability of the availability of the jobs testified to by the

vocational expert.  He also raised the objection in his post-hearing memorandum, contesting the reliability of testimony that the three jobs described in the DOT are available in the current economy in significant numbers.  Reliability is the guiding star when considering job information relied on by the ALJ in determining whether there are jobs in significant numbers in the national economy that the Plaintiff can perform when the RFC is considered.  Section 404.1566(d) provides that the Commissioner, and thus the ALJ, will take notice of "<u>reliable</u> job information available from various governmental and other publications." (emphasis added).

Thus, Plaintiff has raised the issue of the continuing presumption of reliability of the DOT for certain occupations for which the descriptions have not been updated for many years and which may no longer be available in significant, or even insignificant, numbers in the national economy.  As Plaintiff pointed out in the objections filed before the ALJ and in this Court, the three jobs named by the vocational expert in this case are, under the O*NET, either not identified or similar jobs are no longer classified as unskilled jobs which accommodate Plaintiff's mental limitations.  For example, the job of addresser, DOT 249.587-018, which includes addressing mailings by hand or with a typewriter, with an SVP of 2, is not listed in the O*NET.  The closest alternative to this job is listed as "word

processors and typists," 43-9022.00, which job is described as using a word processor, computer, or typewriter to type letters, reports, forms, or other material from rough draft, corrected copy, or voice recording.  This job calls for an SVP range of 4.0 to <6.0.[10]  The job of clippings cutter and paster, DOT 249.587-014, which includes using scissors, paper cutter, or razor knife to cut clippings, with an SVP of 2, is not listed in the O*NET. The closest alternative may be "office clerks, general," 43-9061.00, which calls for duties including operating office machines, maintaining files, and handling mail.  The SVP for this job is also 4.0 to <6.0.[11]  The job of document preparer/microfilming, DOT 249.587-018, which includes using paper cutter, photocopy machine, and rubber stamps to prepare documents for microfilming, with an SVP of 2, is not listed in the O*NET. The closest job description in the O*NET may be "office machine operators, except computer," 43-9071-00, which calls for operating photocopies, photographic machines, duplicating machines, or other office machines. This job has an SVP of 4.0 to <6.0.[12]

---

[10] *See* www.onetonline.org/link/summary/43-9022.00 (last visited September 7, 2017).
[11] *See* www.onetonline.org/link/summary/43-9061.00 (last visited September 7, 2017).
[12] *See* www.onetonline.org/link/summary/43-9071.00 (last visited September 7, 2017).

As noted earlier, the ALJ is allowed to "take administrative notice of reliable job information available from various other governmental and other publications."  20 C.F.R. § 404.1566(d).  In <u>Lee v. Barnhart</u>, 63 F. App'x 291 (9th Cir. 2003) (unpublished), the Court concluded that SSR 00-4p does not preclude reliance on the O*NET.  *Id.* at 293.  Where the O*NET and the DOT conflict, the ALJ must explain the reasons for relying on the O*NET.  *Id.*  Reliance on the O*NET is not improper and, because the information contained in it is more current than the DOT, it is not obsolete and may be found to be more reliable than the DOT in certain cases.  For example, the Court in <u>Johnson v. Berryhill</u>, No. 4:16cv106, 2017 WL 2454326 (W.D. Ky. June 6, 2017), concluded that where the vocational expert relied on the DOT and testified that the plaintiff could perform certain job descriptions that had not been updated for many years, that testimony was found not to be a reliable basis on which to conclude that the jobs exist in significant numbers in the regional and national economy.  *Id.* at *7.  " 'Reliable job information' cannot be obtained from obsolete occupational descriptions," *id.*, and " 'common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted.' "  *Id.* (quoting <u>Cunningham v. Astrue</u>, 360 F. App'x 606, 615 (6th Cir. 2010) (unpublished)).  The Court in <u>Johnson</u>

then noted that the O*NET description for one of the jobs testified to in that case, ticket taker (DOT 344.667-010), is now designated as usher, lobby attendant, and ticket taker, and indicates a substantially higher level of specific vocational preparation than the 35 year old DOT description. *Id.* at *8. The other job testified to by the vocational expert in <u>Johnson</u> was not listed in the O*NET, causing the Court to conclude that "[u]nder the circumstances, the vocational expert's reliance on the 37-year-old DOT listing alone does not warrant a presumption of reliability." *Id.* The Court in <u>Johnson</u> remanded for further consideration whether substantial evidence supported the ALJ's finding that there were jobs in significant numbers in the national economy that the plaintiff could perform, in light of the fact that the VE's reliance on the DOT's occupations listings for the jobs testified to did not warrant a presumption of reliability. *Id.* at *10.

The Court in <u>Cunningham</u> stated that "the Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continually updated based on data collection efforts that began in 2001[.]" 360 F. App'x at 616. The Court found that the vocational expert's "dependence on the DOT listings alone does not warrant a presumption of reliability" and remanded for consideration of whether the listings for the proffered job alternatives were reliable in light of the

economy as it existed at the time of the hearing. *Id. See also* <u>Alaura v. Colvin</u>, 797 F.3d 503, 507-08 (7th Cir. 2015) (stating that the DOT has been superseded by the O*NET); <u>Dimmett v. Colvin</u>, 816 F.3d 486, 489 (7th Cir. 2016) (noting that the SSA, while aware of the obsolescence of the DOT, has not endorsed the O*NET and is developing its own parallel classification system, leaving a vacuum that the O*NET may fill); <u>Feeley v. Comm'r of Soc. Sec.</u>, No. 14-4970, 2015 WL 3505512, at *10-11 & n.2 (D. N.J. June 3, 2015) (noting that the O*NET seems to have replaced the DOT and "[t]he SSA may wish to reconsider its persistent reliance on the DOT in disability proceedings" given that the O*NET database is continually updated based on data collection that began in 2001). The approach followed in <u>Feeley</u>, <u>Dimmett</u>, <u>Alaura</u>, and <u>Cunningham</u> has been described as one in which "the court applies common sense to demonstrate that the DOT's job descriptions are antiquated." <u>Sinclair v. Berryhill</u>, No. 16-10875, 2017 WL 3122563 *13 n.10 (D. Mass. 2017). A judge should consider many criteria in determining whether work exists in significant numbers, including the reliability of the vocational expert's testimony on that issue and the types and availability of such work. <u>Hall v. Bowen</u>, 837 F.2d 272, 275 (6th Cir. 1988).

Because the ALJ did rule on the objection to the testimony of the vocational expert that was raised during the hearing by stating on the record that it was overruled, the ALJ did not clearly violate the express requirement of HALLEX that the ALJ rule on any objections "on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." HALLEX, § I-2-6-74.[13] However, the Plaintiff followed up the hearing objection with an extensive and detailed post-hearing objection to the testimony of the vocational expert. In the post-hearing objection, Plaintiff expanded on and explained in greater detail his grounds for contending the vocational expert's testimony was unreliable in opining that Plaintiff could perform three DOT jobs descriptions that have not been updated in decades and are essentially obsolete.

Under the circumstances presented here, where the reliability of the testimony concerning the DOT job descriptions of document preparer, addresser, and cutter and paster, all with a SVP of 2 (unskilled), and the reliability of evidence that these jobs exist in significant numbers in the current national economy, has been shown to be questionable, the ALJ should have ruled in the decision in narrative fashion on the objections filed by Plaintiff. Accordingly, as to this issue, the decision is reversed and

_____

[13] *See* note 9 *supra*.

remanded to the ALJ to reconsider and expressly rule on Plaintiff's objections and to determine whether substantial evidence supported the ALJ's finding that there were jobs in significant numbers in the national economy that the plaintiff could perform.

**B.**

In his second issue, Plaintiff contends that the ALJ erred by failing to properly consider the medical opinion evidence of Dr. Hector Miranda-Grajales, Dr. Innocent Odocha, and Dr. Eric Scott.  ECF No. 14 at 8-22. He contends that the RFC assessment by the ALJ conflicts with these medical sources because their opinions established far greater and more detailed limitations than the ALJ accounted for in the RFC determination. He argues that the ALJ failed to give legally sufficient reasons for rejecting the opinion of these treating physicians.

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions in the record.  *See* 20 C.F.R. § 404.1527(b) & (c). When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the examining relationship; (2) the treatment relationship, including the frequency of examination and the length, nature, and extent of the treatment relationship; (3) the evidence in support of the opinion, because "[t]he more

a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (6) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

The opinion of the claimant's treating physicians must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor, 786 F.2d at 1053. The ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory." Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). Opinions on issues such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not

medical opinions, . . . but are, instead, opinions on issues reserved to the

Commissioner because they are administrative findings that are dispositive

of the case; i.e., that would direct the determination or decision of

disability." 20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350,

1353-54 (11th Cir. 1986). "[T]reating source opinions on issues reserved to

the Commissioner are never entitled to controlling weight or special

significance." SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996;

rescinded eff. Mar. 27, 2017). Although physicians' opinions about what a

claimant can still do or the claimant's restrictions are relevant evidence,

such opinions are not determinative because the ALJ has responsibility of

assessing the claimant's RFC.

As noted herein, an RFC is the most a claimant can still do despite

limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon

all of the relevant evidence including the claimant's description of his

limitations, observations by treating and examining physicians or other

persons, and medical records. *Id.* The responsibility for determining

claimant's RFC lies with the ALJ, not a treating physician, notwithstanding

the weight accorded treating physicians medical opinions. 20 C.F.R.

§ 404.1546(c). Moreover, opinions from treating physicians regarding a

claimant's RFC would not be entitled to any special weight or deference.

The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability. 20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996; rescinded eff. Mar. 27, 2017). In Lewis v Callahan, the Court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." 125 F.3d at 1440.

It is the task of the ALJ to examine the evidence and resolve conflicting reports. *See* Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996). "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 F. App'x 684, 690 (11th Cir. 2005) (unpublished) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)).

The ALJ in this case declined to award significant weight to the opinions of Dr. Miranda-Grajales, Dr. Innocent Odocha, and Dr. Scott,

stating each is not consistent with treatment notes or the medical record as a whole.  Tr. 39.  Under 20 C.F.R. § 1527, opinions from an examining medical source and a treating medical source are given more weight than those from a medical source who has not examined the plaintiff.  20 C.F.R. § 404.1527(c)(1) & (2).  Opinions of treating medical sources are generally given greater weight than objective medical findings alone or reports of individual examinations or brief hospitalizations.  20 C.F.R. § 404.1527(c)(2).  A treating source's opinion on the nature and severity of the impairments will be given controlling weight if well-supported medically by acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case.  *Id.*

If the opinion of a treating source is not given controlling weight, the factors in other provisions will be considered in determining the weight to be given.  Those other factors include length of treatment, nature and extent of the relationship, which includes the kinds and extent of examinations performed and extent of the treating source's knowledge of the plaintiff's impairments, supportability of the sources' opinions, specialization by the medical source which serves as the basis for more weight, and consistency of the opinions with the record as a whole. 20 C.F.R. § 404.1527(c)(2) & (2)(i), (ii), (3)-5).  "Generally, the more

consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

The evidence in the record disclosed that Plaintiff is married, performs some light household chores (but not dishes), helps some in meal preparation (but not cooking), goes grocery shopping with his wife, can drive (short trips), reads and works crossword puzzles, and can hear and communicate orally. He testified that he does need some help bathing and dressing. Tr. 59-62, 65-67.

Plaintiff testified at the hearing that he became unable to work about August 15, 2013, and had not worked since. Tr. 52. He testified that he cannot turn his neck completely to the left or right all the way, or up or down completely. Tr. 53. He has a knot in his neck from earlier surgery. Tr. 63. When his neck pain flares, he said, he often experiences migraines and bad headaches along with blurry vision. Tr. 64.

Plaintiff testified that he has burning sensation and pain radiating down into his hands, and that both hands tingle and burn "really bad." *Id.* He said he has these flare ups three or four times a day. *Id.* Plaintiff testified that he has difficulty picking up small items, opening bottles, and opening doors. Tr. 53-54. He testified he was to have surgery to implant a stimulator to stop the burning and pain in his upper extremities. He cannot

raise his arms too high because of the problems in his neck and shoulder blades, and can only lift less than five pounds.  Tr. 54, 55.  Plaintiff said he was scheduled to have injections in his lower buttocks areas and hips because he has inflammation in that area making it painful to bend over, stoop, or walk too far.  Tr. at 54-55.  Sitting for more than 15 to 20 minutes, standing for longer than 20 to 25 minutes, and walking for more than 30 minutes results in pain and numbness in his leg.  Tr. 55.  Plaintiff reported that medication does help with the pain, but causes side effects. Tr. 56.

Plaintiff testified that he has problems arising from heart disease including exhaustion, light-headedness, dizziness, and sometimes fainting. Tr. 56-57.  He said he has experienced left side weakness and blurry vision that is not corrected by new glasses.  Plaintiff testified that he had a stroke several years earlier that causes him to frequently forget things.  Tr. 56, 58. He has trouble sleeping at night due to pain and is unable to successfully nap during the day.  Tr. 61-62.  He testified that he has scar tissue in his neck and breathing problems during the night, causing a build-up of phlegm in his throat.  That, and nausea in the morning caused by his medicine, makes getting ready in the morning take longer.  Tr. 68.

## Dr. Hector Miranda-Grajales

Plaintiff saw Dr. Hector Miranda-Grajales, a treating physical medicine and rehabilitation physician, on June 17, 2014, and August 17, 2014, for neck and back pain, tingling in his hands and fingers, and radiating pain in his shoulders.  Tr. 810-13.  His August visit was approximately five months after his Anterior Cervical Discectomy and Fusion (ACDF) surgery on March 6, 2014.  *See* Tr. 814.  On April 15, 2015, Dr. Miranda opined that Plaintiff was indefinitely disabled.  Tr. 680.  On June 4, 2015, Plaintiff was again seen by Dr. Miranda, who noted that Plaintiff had post-traumatic neck and back pain with the potential for permanent impairment secondary to an automobile collision.  Tr. 683.

November 18, 2015, records of Plaintiff's examination by Dr. Miranda indicate that Plaintiff could occasionally and frequently lift less than ten pounds.  Tr. 858.  Plaintiff could never twist, stoop, bend, crouch, or climb stairs or ladders.  Tr. 859.  His ability to kneel, balance, and crawl are affected by his impairments.  *Id.*  The doctor's notes state that the Plaintiff is in constant pain and cannot tolerate prolonged sitting or repetitive use of his upper extremities.  Tr. 858.  Dr. Miranda indicated that Plaintiff's impairments affect his ability for reaching, manipulating objects (both fine and gross manipulation), and pushing and pulling.  Tr. 859.  Dr. Miranda

noted that Plaintiff has persistent neuropathic pain in his upper extremities and constant neck pain, swelling in his hands and increased sensitivity to upper extremity pain. *Id.* Dr. Miranda opined that Plaintiff would be absent from work due to impairments or treatment more than four days per month. *Id.*

The ALJ accorded no significant weight to Dr. Miranda's opinion, concluding that his opinion noted no specific work-related restrictions. Tr.39. The ALJ concluded that Dr. Miranda's opinion that Plaintiff had a less than sedentary residual functional capacity and could not work an eight-hour day was not consistent with treatment notes or overall medical evidence in the record. The specific medical evidence in the record that is said to be inconsistent was not identified in the decision. Dr. Miranda's opinion was not, however, inconsistent with the opinions of Dr. Odocha, and in some respects with the opinions of Dr. Scott, as discussed next.

### Dr. Innocent Odocha

Dr. Innocent Odocha, Plaintiff's treating primary care physician, provided a letter on May 4, 2015, stating that Plaintiff was indefinitely disabled and unable to return to work. Tr. 682. On December 7, 2015, in a Physical Source Medical Statement, Dr. Odocha opined that since June 2014, Plaintiff could carry up to ten pounds occasionally and less than that

on a frequent basis. Tr. 887. His notes from that date show that Plaintiff

had a weakened right side, neck pain, and neuropathy. Tr. 888.

Dr. Odocha stated in the report that Plaintiff had decreased grip strength on

the right and increased pain. *Id.* The notes also state that Plaintiff's

impairments affect his ability for gross manipulation. *Id.* Dr. Odocha's

notes indicate that Plaintiff should be given the opportunity to shift at will

from sitting or standing/walking and that Plaintiff cannot sit and stand

and/or walk for a combined four hours total in an eight-hour workday.

Tr. 887-88. Dr. Odocha concluded that Plaintiff's impairments would often

interfere with his attention and concentration necessary to perform simple

work-related tasks. Tr. 888. He also concluded that Plaintiff would on

average miss about four days of work per month. *Id.*

### Dr. Eric Scott

Plaintiff had C4-7 ACDF surgery on March 6, 2014. Dr. Eric Scott,

Plaintiff's treating neurosurgeon, saw Plaintiff on March 13, 2014, for right

shoulder pain, and examination disclosed weakness in the shoulder.

Tr. 873. His grip strength was improving at that time. In June 2014,

Dr. Scott's notes show the medications were not helping Plaintiff's pain.

Tr. 871. Plaintiff had decreased range of motion in his bilateral shoulders

but upper extremity strength was intact. *Id.* In the August 25, 2014,

examination by Dr. Scott, his notes show that Plaintiff's symptoms were the same.  Tr. 814.  Dr. Scott noted that an EMG/nerve conduction study by Dr. Feussner in June 2014 showed bilateral median nerve entrapments at the wrist and bilateral C6 radiculopathy.  *Id.*  Dr. Scott stated in the notes, "The EMG findings are not totally unexpected as he had significant compression at multiple levels."  *Id.*  On November 3, 2014, Plaintiff saw Jaclyn Wynn, PA-C, in the office of Dr. Scott.  Tr. 869.  Some decreased range of motion was noted in Plaintiff's cervical spine and in his shoulder bilaterally, along with decreased strength.  *Id.*

On June 15, 2015, Dr. Scott noted that Plaintiff was still having "considerable pain" in his right shoulder.  Tr. 868.  Dr. Scott reported that Plaintiff had "give way weakness of the deltoid, biceps and triceps."  *Id.*  In his office notes dated November 12, 2015, Dr. Scott concluded that Plaintiff had continuing cervicobrachial pain, particularly with range of motion. Tr. 866.  Plaintiff had a 3+ grip strength on the right and 4+ grip strength on the left.  The dorsal interosseous and flexors of the ulnar digits were "markedly weak" on the right.  *Id.*

Dr. Scott noted on November 13, 2015, that Plaintiff could occasionally and frequently lift less than ten pounds.  Tr. 852.  Dr. Scott noted that Plaintiff's physical impairments affected his reaching, fingering,

pushing/pulling, gross manipulation, and feeling. Tr. 853. Dr. Scott also opined that Plaintiff's impairments would, on average, cause him to be absent more than four days per month. *Id.*

The ALJ declined to give significant weight to Dr. Scott's opinions, referring primarily to the November 13, 2015, form completed by Dr. Scott in which no limitation was stated as to Plaintiff's abilities to sit, stand, and/or walk during the eight hour workday. Tr. 39. While not completely consistent in this respect with the opinions of Drs. Miranda and Odocha, Dr. Scott's opinion that Plaintiff's impairments would cause him to miss, on average, more than four workdays a month, was consistent with those of Drs. Miranda and Odocha. Dr. Scott's medical records and notes document, over a long period of time, Plaintiff's physical impairments and resulting ongoing pain that each doctor opined would interfere with Plaintiff's ability to work a full workday and avoid absences. He also noted in that form that Plaintiff's impairments would frequently be severe enough to interfere with his attention and concentration required to perform simple work-related tasks. Tr. 853.

## Other Medical Evidence

On September 11, 2013, Plaintiff saw Dr. Phillip Parr, an orthopedic surgeon, after a slip and fall injury to his neck. Tr. 606. Plaintiff also had

back pain and was diagnosed with acute cervical and lumbar strain.
Tr. 607.  The next day, Dr. Parr saw Plaintiff again regarding his left elbow
and wrist.  Tr. 608.  Plaintiff had limitation of extension and flexion, but no
evidence of fracture.  *Id.*  On October 23, 2013, Dr. Parr reported that
Plaintiff was still reporting back pain and wrist pain.  An MRI had been
ordered but not yet completed.  Tr. 609.  Plaintiff was restricted to no
bending, lifting, twisting, pushing, pulling or grasping with the left wrist.  *Id.*
On November 22, 2013, Dr. Parr examined Plaintiff, who reported tingling
in his hands and chronic pain in his wrists.  Tr. 612.  Dr. Parr ordered a
nerve conduction study.  *Id.*  Plaintiff was restricted as to bending, lifting,
twisting, or grasping with the left hand.  *Id.*

A December 26, 2013, MRI of the lumbar spine disclosed posterior
central disc herniation at L3-4, L4-5, and L5-S1 impinging on the thecal
sac.  Tr. 677.  No spinal canal stenosis was noted.  *Id.*  A cervical MRI was
also performed, which disclosed a disc bulge at C2-3; disc bulge impinging
on the thecal sac at C3-4 and C7-T1 causing moderate narrowing of the
bilateral neural foramina; posterocentral/left paracentral disc herniation at
C4-5; and posterocentral disc herniation at C5-6 and C6-7 impinging on the
thecal sac.  Tr. 678-79.

On January 3, 2014, an MRI scan of Plaintiff's left and right shoulders revealed, in the right shoulder, mild posterior subluxation of the humeral head; supraspinatus tendinosis; complex tears of the mild anterior labrum; focal subcortical marrow edema at the super lateral aspect of the humeral head; and moderate fibro-osseous capsular hypertrophy of the acromioclavicular joint with marrow edema at the contiguous articular margins.  Tr. 674-75.  The left shoulder showed supraspinatus tendinosis; bucket-handle tears of the entire posterior labrum; and moderate fibro-osseous capsular hypertrophy of the acromioclavicular joint with marrow edema at the contiguous articular margins.  Tr. 676.

Plaintiff saw Dr. Andrew Rocca, an orthopedic surgeon, for shoulder pain on February 4, 2014.  Tr. 894-897.  Dr. Rocca noted no deformity or swelling, but impingements were noted.  Tr. 894.  Limited motion was noted in Plaintiff's neck and "obvious muscle spasms in the pericervical musculature and some obvious muscle spasms as well in the trapezius musculature."  Tr. 895.  Dr. Rocca gave Plaintiff a shoulder injection and future shoulder arthroscopy was discussed.  Tr. 896-97.  Plaintiff saw Dr. Rocca again on April 15, 2014, and was diagnosed with shoulder pain, bilateral labral tears, shoulder impingement, adhesive capsulitis, and upper extremity paresthesias.  Tr. 899.  Plaintiff was placed on the schedule for

shoulder surgery. Tr. 901. Right shoulder arthroscopy was performed on April 21, 2014, and Dr. Rocca saw Plaintiff in a follow-up examination on April 30, 2014. Tr. 902. Plaintiff's continued neck pain was noted. *Id.* On June 18, 2014, Dr. Rocca saw Plaintiff and noted continued chronic neck pain. Tr. 903-04. In the July 10, 2014, follow-up examination, continued neck and back pain were noted, along with chronic upper extremity and lower extremity paresthesias and scapular winging. Tr. 905-06.

On June 18, 2015, Plaintiff was examined by anesthesiologist Dr. Brent Stewart after referral by Dr. Miranda. Tr. 829. Plaintiff reported severe and constant neck, shoulder, arm, and back pain. Tr. 829-33. Plaintiff reported associated muscle spasms, nausea, numbness, tingling and weakness. Tr. 829. At the time, Plaintiff was taking a large number of medications for pain and other conditions. Tr. 830. Plaintiff reported a decrease in his daily activities and changes in his sleep habits. *Id.* A physical examination showed normal heel and toe walking but with antalgic gait. Tr. 831. Lumbosacral spine flexion was reported to be normal although lateral flexion to the left was limited. Tr. 832. Lower extremity range of motion was normal. *Id.* Sacroiliitis and greater trochanteric bursitis were diagnosed. Tr. 833. Sacroiliac joint injections were ordered and greater trochanteric injections were considered. *Id.*

Plaintiff saw Linda Abeles, Ph.D., a licensed psychologist, for a mental consultative clinical evaluation on October 10, 2013.  Tr. 587-89. The ALJ gave significant weight to Dr. Abeles' diagnosis of Plaintiff with mood disorder NOS, cognitive disorder NOS (provisional), and rule out bipolar disorder with psychotic features.  Tr. 38.  The ALJ did not cite, and apparently did not give significant weight to, Dr. Abeles' evaluation that Plaintiff's "judgment abilities appeared impaired," that his "verbal reasoning abilities appeared decreased," and that his "memory abilities appear decreased."  Tr. 588.  Dr. Abeles also stated, "Overall, given Mr. Sam's educational and vocational histories, it is likely that his current cognitive abilities represent a decrease from pre-morbid levels."  *Id.*  Dr. Abeles also opined that Plaintiff's ability to manage his own funds was in question. Tr. 589.  The ALJ did not cite, and apparently did not give significant weight to, Dr. Abeles' finding that Plaintiff's current level of psychological functioning would be hindrance to him in obtaining and maintaining employment.  Tr. 589.  The ALJ did give significant weight to the opinion of the State agency psychologists who opined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace because the opinion was "consistent, unbiased, and generally supported by the medical record."  Tr. 38 (citing Ex. 1A and 3A).  The agency psychologists opined

that Plaintiff could persist at simple and routine tasks for a regular workday at an appropriate pace and can sustain at this level over an extended period of time." Tr. 87, 104.

The ALJ gave significant weight to a workers compensation report dated April 2010, which indicated that Plaintiff was limited to lifting no more than twenty pounds. Tr. 38 (citing Exhibit at Tr. 492). This report was done more than three years prior to Plaintiff's alleged onset date.

### Discussion

After declining to give significant weight to the treating physicians' opinions, and after relying in large part on finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible, Tr. 39, the ALJ found that Plaintiff had the RFC to perform "less than a full range of sedentary work" with a 30 minute sit/stand option and with other physical movement restrictions. Tr. 37. The RFC is limited to performing simple tasks with little variation that take a short time to learn. *Id.* In reaching this conclusion, and in determining that the treating physicians' opinions were not entitled to significant weight, the ALJ relied on a failure of consistency "with treatment notes or with the medical record on the whole." Tr. 39.

In declining to give substantial weight to Dr. Scott's opinion, the ALJ cites the fact that in 2014, after surgery, he advised Plaintiff to discontinue wearing the collar and noted in 2015 that his cervical spine fusion had healed.  Tr. 39.  However, in that same form referred to by the ALJ but not noted by the ALJ, Dr. Scott noted that Plaintiff had "minimal ability to use right arm & hand."  Tr. 852.  The ALJ also noted that Dr. Scott, in a form signed in November 13, 2015, did not note any limitations on time for sitting, standing, or walking.  *See* Tr. 852.  The ALJ cites this as evidence of lack of consistency with Dr. Odocha's opinion that Plaintiff cannot sit and stand and /or walk for a combined four hours total in an eight-hour workday.  Tr. 39.  However, Dr. Odocha's sit/stand/walk limitations are not inconsistent with those of Dr. Miranda.  *See* Tr. 858, 887.  Other portions of Dr. Odocha's and Dr. Scott's opinions and findings are also consistent. Both Dr. Odocha and Dr. Scott found Plaintiff suffered from weakening and pain in his neck and shoulder area.  Tr. 888, 868.  Both Dr. Odocha and Dr. Scott found Plaintiff had decreased range of motion.  Tr. 887, 866.  All three treating physicians opined that Plaintiff's impairments adversely affect his ability for both gross manipulation of objects (handling).  Tr. 853, 859, 888.  Both Dr. Scott and Dr. Miranda opined Plaintiff's fine manipulation (fingering) was also adversely affected.  Tr. 853, 859.  The vocational

expert testified at the hearing that if Plaintiff cannot finger frequently, both the jobs of document preparer and cutter/paster would be eliminated.[14] Tr. 73.

Dr. Miranda, Dr. Odocha, and Dr. Scott all opined that Plaintiff's impairments would cause him to be absent from work, on average, for at least four days a month. Tr. 888, 853, 859. Both Dr. Scott and Dr. Odocha opined that Plaintiff's symptoms associated with his impairments were severe enough to interfere with attention and concentration required to perform work-related tasks often or frequently. Tr. 888, 853.

The ALJ explains rejection of Dr. Miranda's opinion that Plaintiff cannot work an eight-hour day by stating that was "not consistent with treatment notes or with the overall medical evidence of record," Tr. 39, but does not cite the portions of the medical record that refute or contradict this opinion. The ALJ's general statement that the opinions of Drs. Miranda, Odocha, and Scott are inconsistent with the treatment notes or the medical

---

[14] The vocational expert testified that Plaintiff could perform positions such as a document preparer/microfilming, DOT number 241.587-018 (using paper cutter, razor knife, photocopier, stamps, involving sitting most of the time); addresser, DOT number 209.587-010 (requiring addressing envelopes by hand or typewriter, sitting most of the time); and press clipping cutter and paster, DOT number 249.587-014 (using knife or scissors, tearing or cutting articles, involving sitting most of the time). *See* Dictionary of Occupational Titles (4th Ed., Rev. 1991). Even if these jobs were still available in significant numbers in the current economy, each would require, by their DOT definitions, frequent fingering and handling, and sitting most of the time.

record as a whole fails, in large part, to specify what treatment notes are inconsistent or what portions of the medical record as a whole are inconsistent. Moreover, the conclusion of the ALJ fails to note consistencies between and among the opinions and medical records of the treating physicians. Drs. Miranda and Odocha both opined that Plaintiff would be unable to sit or stand for no more than two hours in a normal eight-hour workday. Tr. 858, 887. Dr. Scott and Dr. Miranda both opined that Plaintiff's fingering would be affected by his impairments. Tr. 853, 859. All three treating physicians opined that Plaintiff would miss, on average, at least four days of work a month. Tr. 853, 859, 888. The ALJ's broad, unspecific explanation of the reason for giving less than significant weight to the treating physicians' opinions does not satisfy the requirement that the ALJ demonstrate good cause for rejecting the medical opinions of treating sources.

Absent "good cause," an ALJ is to give the medical opinions of treating physicians substantial or considerable weight. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). As noted earlier, "[g]ood cause exists 'when the (1) the treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's

own medical records.' " *Id.* (quoting <u>Phillips</u>, 357 F.3d at 1241). An ALJ must provide "clearly articulated" grounds for rejecting a treating physician's opinion. <u>Winschel</u>, 631 F.3d at 1179. The failure to give clearly articulated reasons for giving less weight to the opinion of a treating physician is reversible error. <u>Lewis v. Callahan</u>, 125 F.3d at 1440.

A general statement that the opinions are not consistent with treatment notes and with the medical record as whole, without more explanation, fails to clearly articulate grounds for failing to accord substantial or considerable weight to the opinions of the treating physicians. Where an ALJ has failed to properly refute a treating physician's testimony and explain with sufficient clarity the grounds for the evidentiary decision, the Court "will not affirm 'simply because some rationale might have supported the ALJ's conclusion,' and instead remand 'for further findings at the administrative hearing level.' " <u>Dempsey v. Comm'r of Soc. Sec.</u>, 454 F. App'x 729, 732 & n.5 (11th Cir. 2011) (unpublished) (quoting <u>Owens v. Heckler</u>, 748 F.2d 1511, 1514-16 (11th Cir. 1984)). *See also* <u>Winschel</u>, 631 F. 3d at 1179.

In <u>Dempsey</u>, the ALJ mentioned one part of a treating physician's RFC questionnaire and reached certain findings contradicted by the doctor's opinion. The Court found that the ALJ erred in failing to mention

other portions of the treating physician's questionnaire that included the

doctor's opinion that the plaintiff would experience pain and other

symptoms severe enough to frequently interfere with the attention and

concentration needed to perform even simple tasks.  <u>Dempsey</u>, 454 F.

App'x at 733.  Similarly, in this case, the ALJ ignored those portions of the

treating physicians' notes and questionnaires that were consistent with

each other and which indicated that Plaintiff's pain and symptoms

associated with his impairments were severe enough to interfere with

attention and concentration required to perform work-related tasks often or

frequently and would likely cause at least four days of missed work per

month.  The ALJ also did not discuss the treating physicians' opinions that

Plaintiff's impairments would adversely affect his ability for fine and gross

manipulation of objects.

     The ALJ found that Plaintiff's medically determinable impairments

could reasonably be expected to cause his alleged symptoms.  Tr. 39.

Because the ALJ failed to properly refute the treating physicians' evidence

and explain with sufficient clarity the grounds for failing to accord the

treating physicians' opinions significant weight or controlling weight, the

decision is reversed and remanded for the ALJ to clarify and more fully

support the reasons for discounting the treating physicians' opinions or,

alternatively, to give the opinions controlling weight and modify the RFC and resulting decision accordingly.  In light of this Court's determination that a remand is required, new vocational expert testimony based on the appropriate RFC will likely be needed.

## C.

In his final issue, Plaintiff contends that the ALJ's credibility determination concerning the Plaintiff was flawed primarily because the ALJ did not acknowledge or discuss Plaintiff's consistent work history.  ECF No. 14 at 22.  He also contends that the credibility determination was flawed because of the errors alleged in the previous issues.  *Id.*  Plaintiff recognizes that courts are reluctant to disturb an ALJ's credibility findings, but argues that a credibility assessment is not sacrosanct.  *Id.*

Guidelines for evaluating symptoms, including pain, are contained in 20 C.F.R. § 404.1529.  The Commissioner will consider all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  Under this provision, there must be objective medical evidence from an acceptable medical source that shows a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  That evidence, when

considered with all other evidence, including statements about the intensity of the pain and other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings, must lead to a conclusion that the claimant is disabled. *Id.* In evaluating the intensity and persistence of the claimant's symptoms, the Commissioner will consider, *inter alia*, medical history, laboratory findings, and statements about how the symptoms affect the claimant. *Id.* In addition to medical evidence, in evaluating the intensity and persistence of symptoms and in determining the extent to which the symptoms limit the claimant's capacity for work, the Commissioner will look at numerous other factors, including the claimant's work record and daily activities. *See* 20 C.F.R. § 404.1529(3) & (4).

"The ALJ must consider a claimant's subjective testimony if he finds (1) evidence of an underlying medical condition and (2) either (a) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (b) that the medical condition was of such severity as to reasonably give rise to the alleged pain." Pritchett v. Comm'r, Soc. Sec. Admin., 315 F. App'x 806, 811-12 (11th Cir. 2009) (unpublished) (citing Mason v. Bowen, 791 F.2d 1460, 1462 (11th Cir. 1986)). If the ALJ discredits the claimant's testimony or subjective symptoms, he must "clearly articulate explicit and adequate reasons" for his decision. Dyer v.

Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). In articulating the reasons,

the ALJ need not specifically refer to every piece of evidence, but it cannot

be merely a "broad rejection which is not enough to enable the district court

or this Court to conclude that the ALJ considered [the claimant's] medical

condition as a whole." *Id.* In explaining the reasons for discrediting the

credibility of the claimant's testimony as to frequency, intensity, and

duration of symptoms, the ALJ may cite the claimant's daily activities. The

Court will not disturb a clearly articulated credibility finding that is supported

by substantial record evidence. Pritchett, 315 F. App'x at 811-12.

However, the ALJ must "articulate specific reasons for questioning the

claimant's credibility" if subjective symptom testimony is "critical" to the

claim. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992); Chambers

v. Comm'r of Soc. Sec., 662 F. App'x 869, 871 (11th Cir. 2016)

(unpublished).

    The ALJ in this case concluded as to effect of Plaintiff's impairments

and his credibility:

> After careful consideration of the evidence, I find that the
> claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms;
> however, the claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms are not
> entirely credible for the reasons explained in this decision.

. . . . The claimant partakes in a wide array of daily activities that can be physically and mentally demanding and are not the type expected from a totally disabled individual. The claimant reported that he drives, cooks, and performs household chores. Such activities are not typically expected from a totally disabled individual.

The claimant testified that his medication [is] helpful in controlling his pain. The claimant has not required long hospitalizations for his physical condition and has had no mental inpatient hospitalizations, indicating that his symptoms and limitations are not as severe or limiting as alleged.

The claimant has provided conflicting information that has affected his credibility. He reported that he cares for his daily needs though testified he needs help bathing and dressing. The claimant testified he cannot turn his head from side to side though is able to drive. The claimant's conflicting statements make one question the truthfulness of his remaining statements.

Tr. 39-40 (footnote added) (citation to evidence omitted).

The statements cited by the ALJ occurred in September and October 2013. Plaintiff stated in a form he filled out in September that he will prepare meals about 3 times a week but his wife cooks if he is not feeling well. Tr. 218. He is reported to have said in October 2013 that he spends his days lying down or sitting; he is capable of taking care of daily needs including using the bathroom and preparing simple meals; and he can go out including to the grocery store. Tr. 588. At the hearing in 2016, Plaintiff testified that he needs help sometimes with bathing and dressing; can take the trashcan from his bathroom and straighten his bed; can help season

food in the kitchen but cannot cook due to dizziness and dropping things; and he can drive short distances.  Tr. 59-61.  He testified he cannot drive too far because of the medications he is taking.  Tr. 59.  As to Plaintiff's inability to turn his head, which the ALJ found conflicted with his statement that he drives, the Plaintiff more fully explained that he cannot turn his head "completely to my left or my right all the way."  Tr. 53.  This limitation does not directly conflict with statements that he can drive short distances. Driving a short distance, sometimes performing light cooking preparation, and light household chores described as taking out a bathroom trashcan, does not conflict with medical opinions that Plaintiff cannot perform sedentary work for a full workday.  "[P]articipation in everyday activities of short duration, such as housework" does not disqualify a claimant from disability.[15]  Lewis, 125 F.3d at 1441.

The medical record substantiates Plaintiff's difficulty in fine and gross manipulation of objects and his inability to sit, stand, or walk for longer periods of time.  The fact that he can sometimes perform those tasks, or a modified version of them, does not prove inconsistency with medical

---

[15] The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  But see Lewis, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability and is not necessarily inconsistent with the limitations recommended by the claimant's treating physicians.).

evidence that his impairments and the chronic severe pain from them would prevent his ability to work full days or work a sufficient number of days a month to avoid discharge due to excessive absences. All three treating physicians opined that that Plaintiff's impairments would likely result in at least four absences a month. Tr. 888, 853, 859. The vocational expert testified at the hearing that employers in the jobs she testified were available to Plaintiff would tolerate no more than two absences in a 30-day work period. Tr. 71.

Moreover, the ALJ did not discuss, in relation to the credibility determination, Plaintiff's long history of employment. The record shows that Plaintiff had been working as an automobile mechanic for a total of eleven years and also worked as a cart attendant at a golf course for two years. Tr. 52, 188. Plaintiff is correct that consideration of his history of continued employment adds to his credibility and should have been considered by the ALJ in reaching the credibility determination in this case. As this case is being reversed and remanded for further findings on the first two issues, the ALJ on remand should also reconsider and redetermine Plaintiff's credibility in this case. No opinion is reached regarding whether Plaintiff is disabled.

## V. Conclusion

For the foregoing reasons, pursuant to the fourth sentence in 42 U.S.C § 405(g), the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this decision. The Clerk shall enter judgment for Plaintiff.

**IN CHAMBERS** at Tallahassee, Florida, on September 8, 2017.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**